**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEBRASKA**

| | |
|---|---|
| IN THE MATTER OF:<br>ANTHONY WAYNE SPEARS | CASE NO. BK 11-81207 |
| Debtor. | CHAPTER 7 |
| | **ADV. NO. A19-8033** |
| ANTHONY WAYNE SPEARS & TROY<br>ORLANDO ROBINSON,<br><br>     Plaintiffs,<br><br>vs.<br><br>UNIVERSITY ACCOUNTING SERVICES,<br>LLC; YOUNOMIC PRIVATE STUDENT LOAN<br>TRUST; NAVIENT SOLUTIONS, LLC; AND<br>FIRSTMARK SERVICES, LLC;<br><br>     Defendants. | |

**BRIEF IN OPPOSITION TO THE MOTION TO**
**DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**
**<u>FILED BY DEFENDANT NATIONAL COLLEGIATE TRUST 2006-A</u>**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .ii-iii

I.      INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.    ARGUMENT AND AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4

        A.  The Motion to Dismiss is disfavored and should be denied . . . . . . . . . . . . . . . . . . . .4

        B.  Plaintiffs Have Sufficiently Alleged that the Loans are not "Qualified
            Education Loans" Excepted from Discharge Pursuant to Section
            523(a)(8)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

            1.  This Court has already rejected the Trust's argument with regard to
                the applicability of Section 523(a)(8)(B) to the very same Loans. . . . . . . . . . . . .6

            2.  The Court must look to the statutory framework under Section
                523(a)(8)(B) in determining whether an educational loan is a
                "qualified education loan." . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

            3.  Plaintiffs' certifications in their loan applications are irrelevant in
                determining whether an educational loan is a "qualified education
                loan." . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

            4.  The "purpose of the loan" test is inapplicable if a loan does not fall
                within the framework of Section 523(a)(8). . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

            5.  The Trust's arguments as to Robinson's cost of attendance are
                inappropriate at the motion to dismiss stage and conflate the
                meaning of "cost of attendance." . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

        C.  Plaintiffs have stated a claim for undue hardship. . . . . . . . . . . . . . . . . . . . . . . . . . 16

IV.     CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .19

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .20

# TABLE OF AUTHORITIES

*Cases*

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937,
1949 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4, 17

*Bank of China v. Huang (In re Huang)*, 275
 F.3d 1173 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544,
570 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 17

*Braden v. Wal-Mart Stores, Inc.*, 588 F.3d
585, 594 (8th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4

*Del-Maur Farms, Inc. v. Cargill, Inc.*, No. 04-CV-3282,
 2005 WL 8176048, at *1 (D. Neb. Jan. 20, 2005) . . . . . . . . . . . . . . . . . . . . . . . . .4

*Eul v. Transworld Sys.*, No. 15-7755, 2017 WL 1178537,
at *6-7 (N.D. Ill. Mar. 30, 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Fallick v. Kehr*, 369 F.2d 899, 904 (2d Cir. 1966) . . . . . . . . . . . . . . . . . . . . . . . .9

*First Georgia Bank v. Halpern (In*, re Halpern), 50 B.R.
260 (Bankr. N.D. Ga. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9-10

*Giaimo v. Detrano (In re Detrano)*, 222 B.R. 685
(Bankr. E.D.N.Y. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Golden v. JPMorgan Chase Bank (In re Golden)*,
596 B.R. 239 (Bankr. E.D.N.Y. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10, 13

*Greensward, Inc. v. Cietek (In re Cietek)*, 390 B.R. 773 (Bankr. N.D.N.Y. 2008) .9

*In re Campbell*, 547 B.R. 49, 61 (Bankr. E.D.N.Y. 2016) . . . . . . . . . . . . . . . . . . . .5

*In re Carow*, No. Adv-10-7011, 2011 WL 802847
(Bankr. D.N.D. Mar. 2, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*In re Cole*, 226 B.R. 647, 651-52 (9th Cir. BAP 1998) . . . . . . . . . . . . . . . . . . . . . .9

*In re Crocker*, 941 F.3d 206 (5th Cir. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*In re Dufrane*, 566 B.R. 28 (N.D. Cal. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . 10-11

*In re Ethridge*, 80 B.R. at 586 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*In re Fern*, 563 B.R. 1, 3-4 (B.A.P. 8th Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . 16

*In re McDaniel*, 590 B.R. 537, 545 (Bankr. D. Colo. 2018) . . . . . . . . . . . . . . . . . 5

*In re Mascoll*, 246 B.R. 697, 699-701 (Bankr. D. D.C. 2000) . . . . . . . . . . . . . . .11

*In re Meyer*, No. 15-13193, 2016 WL 3251622, at *2
(Bankr. N.D. Ohio June 6, 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*In re Noland*, No. A09-8048-TJM, 2010 WL 1416788
(Bankr. D. Neb. Mar. 30, 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*In re Suggs*, 377 B.R. 198, 202 (B.A.P. 8th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . 4

*In re Wiley*, 579 B.R. 1 (Bankr. D. Me., 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Johnson v. City of Shelby*, 574 U.S. 10, 10 (2014) . . . . . . . . . . . . . . . . . . . . . . . . .4

*Robinson et al. v. Discover Products, Inc. et al.*,
Adv. Pro. No. 19-8032 (Bankr. D. Ne. Mar. 13, 2019) . . . . . . . . . . . . . . . . . . . . . 3

*Robinson, et al. v. Wells Fargo Bank, N.A., et al.*,
Adv. Pro. No. 19-8032-BSK (Bankr. D. Ne.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Taggart v. Lorenzen* 139 S. Ct. 1795 (2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Tamasco v. Nicholls (In re Nicholls)*, 2010 WL 5128627
(Bankr. E.D.N.Y. Dec. 10, 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9-10

## *Statutes & Rules*

11 U.S.C. § 523(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1-2, 5-8, 10-13, 16

20 U.S.C. 1087*ll* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7-8

26 U.S.C. § 221 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Fed. R. Bankr. P. 4004(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Fed. R. Civ. P. 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Plaintiffs, Troy O. Robinson ("Robinson") and Anthony W. Spears ("Spears," together with Robinson, "Plaintiffs"), respectfully submit this Memorandum in Opposition to the Motion to Dismiss Plaintiffs' Second Amended Complaint filed by Defendant, National Collegiate Trust 2006-A (the "Trust"). *See* ECF Nos. 162-166.

## I.   <u>INTRODUCTION</u>

The Trust raises three arguments in support of dismissal of this action. The first two arguments relate to Plaintiffs' allegations that the loans owned by the Trust (the "Loans") are dischargeable because they are not excepted from discharge under 11 U.S.C. § 523(a)(8)(B) ("Section 523(a)(8)(B)"), and the final argument relates to Plaintiffs' allegations that the Loans should be discharged based on undue hardship. This Court should reject all three.

The Trust's first argument regarding Section 523(a)(8)(B) asks this Court to conclude that Plaintiffs' Loans are "qualified education loans" based on Plaintiffs' certifications that the Loans would be used for tuition and educational expenses in the underlying loan applications. Such an approach for determining whether an educational loan is a "qualified educational loan" could lead to absurd results, inconsistent with the actual law in place for such a determination, which the Trust misrepresents in its motion (along with Plaintiffs' explanation of that law in the Second Amended Complaint ("SAC")). *See* ECF No. 136. Additionally, the Trust's reliance on "the purpose of the loan" test is misplaced given the underlying facts of this case.

The Trust's second argument regarding Section 523(a)(8)(B) insists that the Loans are non-dischargeable because, contrary to Plaintiffs' allegations in the SAC, the Loans are within the "cost of attendance." This argument, which hinges on a variety of unsupported factual assumptions and outside "evidence," is entirely inappropriate at the motion to dismiss stage and is more properly considered at the summary judgment stage or at trial. Moreover, the Trust once more displays a

1

fundamental misunderstanding of the term of art, "cost of attendance," as it relates to determining whether an educational loan is a "qualified education loan."

Finally, as to the Trust's argument that the SAC does not sufficiently allege facts for a determination of undue hardship, Plaintiffs aver that they have pleaded facts sufficient to state a claim for undue hardship at the pleadings stage.

## II.    <u>BACKGROUND</u>

This action involves private student loans originated, serviced, and/or collected by the Defendants that do not fall within any of the three exceptions to discharge in bankruptcy as set forth in 11 U.S.C. § 523(a)(8). The Trust, with full knowledge of the scope and application of Section 523(a)(8), has exploited the statutory framework protecting certain educational loans from discharge in bankruptcy so as to deny bankruptcy relief to borrowers, like the Plaintiffs, with dischargeable consumer debt.

Specifically, the Trust holds and accepts payments on dischargeable consumer loans made for amounts in excess of the *published* cost of attendance at qualified institutions, as recognized by the Department of Education pursuant to Title IV of the Higher Education Act, the Internal Revenue Code, and the Bankruptcy Code. Because these loans were made for amounts in excess of the published cost of attendance, they were neither "educational loans" nor "qualified education loans" pursuant to Section 523(a)(8) of the Bankruptcy Code. Such loans have no protection under Section 523(a)(8). They are automatically discharged upon entry of a bankruptcy court's discharge order, and are subject to the statutory injunction prohibiting all collection efforts.

Robinson is a student borrower whose consumer loans were in excess of the cost of attendance at his undergraduate and graduate schools, Butler University and Logan University. Two of these loans are and held by the Trust. Spears co-signed some of Robinson's loans.

Robinson filed for bankruptcy in this district in 2011.[1] He received a discharge order from this Court in July 2011.[2] Spears also separately filed for bankruptcy in this Court in 2011.[3] He received a discharge order from this Court in August 2011.[4] After Robinson and Spears completed their bankruptcy actions and obtained their discharge orders, Defendants—including the Trust—knowingly sought to induce payment on their private consumer loans in violation of the statutory injunctions. These collection efforts, including those on behalf of the Trust, continue to this day.

Robinson and Spears now reside in the Western District of Texas; therefore, they initially registered their respective discharge orders in that District pursuant to Fed. R. Bankr. P. 4004(f). Robinson's Discharge Order was registered in the Western District of Texas on March 13, 2019,[5] and Spears' Discharge Order was registered in that District on March 25, 2019.[6] On June 17, 2019, Robinson and Spears filed this action to enforce their right to a fresh start and to halt other named Defendants' continued collection efforts. *See* ECF No. 2. The case was thereafter transferred to this Court based on the Fifth Circuit's decision in *In re Crocker*, 941 F.3d 206 (5th Cir. 2019), *as revised* (Oct. 22, 2019), which held that bankruptcy courts lack authority to enforce discharge orders which were issued in different judicial districts irrespective of Rule 4004(f).

After a hearing in this Court on the motion to dismiss filed by Defendant, Nelnet Servicing, LLC d/b/a Firstmark Services ("Firstmark"), based on Firstmark's insistence that Plaintiffs name as a defendant the holder of the Loans serviced by Firstmark, Plaintiffs filed the SAC to name the purported holder of the Loans (as that information was conveyed by Firstmark to Plaintiffs). *See*

---

[1] Case Number 11-80896-TLS in the United States Bankruptcy Court for the District of Nebraska, filed April 8, 2011.
[2] *See id.* at ECF No. 1.
[3] Case Number 11-81207-TJM in the United States Bankruptcy Court for the District of Nebraska, filed May 10, 2011.
[4] *See id.* at ECF No. 1.
[5] Upon registration, Robinson's discharge order was assigned Misc. Pro. No. 19-00501-rbk in the Western District of Texas. *See Robinson et al. v. Discover Products, Inc. et al.*, Adv. Pro. No. 19-8032 (Bankr. D. Ne. Mar. 13, 2019), ECF No. 1.
[6] Upon registration, Spears' discharge order was assigned Misc. Pro. No. 19-00502-rbk in the Western District of Texas. *See* ECF No. 1.

ECF No. 136. It was later revealed that Firstmark was incorrect regarding the identity of the owner of the Loans it services, despite Firstmark's insistence of its obviousness to this Court (and inference that Plaintiffs' lack of knowledge as to the Loans' owner was insincere). Accordingly, the parties stipulated to substituting the Trust as the proper party in the SAC on July 29, 2020. *See* ECF No. 159-160.[7] The Trust thereafter filed the instant motion to dismiss.

## III.  **ARGUMENT AND AUTHORITIES**

### A.  The Motion to Dismiss is disfavored and should be denied.

In reviewing a Rule 12(b)(6) motion, this Court "must accept all well-pled facts as true and draw all reasonable inferences in favor of the [non-movant]." *In re Suggs*, 377 B.R. 198, 202 (B.A.P. 8th Cir. 2007) (citations omitted). Motions to dismiss under Fed. R. Civ. P. 12(b)(6) are viewed with disfavor and the complaint must be liberally construed. *Del-Maur Farms, Inc. v. Cargill, Inc.*, No. 04-CV-3282, 2005 WL 8176048, at *1 (D. Neb. Jan. 20, 2005). The court's task is to determine whether the plaintiff has stated "a claim to relief that is plausible on its face." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (internal quotation marks omitted). The plausibility standard does not require a plaintiff to show that success on the merits is probable; rather, the plaintiff need only show at the pleading stage that success on the merits is a "sheer possibility." *Id.* (citations omitted).[8] Indeed, under Federal Rule of Civil Procedure 8, a complaint need only present "a short and plain statement of the claim showing that the pleader is entitled to relief." *Id.* (quoting Fed. R. Civ. P. 8(a)) (internal quotation

---

[7] Therefore, all references to "National Collegiate Master Student Loan Trust I" or "NCMSLT" are to be replaced with "National Collegiate Trust 2006-A" or the "Trust."

[8] The plausibility requirement, articulated in *Twombly*, 550 U.S. 544, and *Iqbal*, 556 U.S. 662, "concern[s] the *factual* allegations a complaint must contain to survive a motion to dismiss." *Johnson v. City of Shelby*, 574 U.S. 10, 10 (2014) (emphasis in original). A claim is facially plausible when the plaintiff pleads facts that allow a court to draw a reasonable inference that the defendant is liable. *Iqbal*, 556 U.S. at 678.

marks omitted). Because Plaintiffs have sufficiently stated their claims for relief, Firstmark's

Motion should be denied.

> **B. Plaintiffs Have Sufficiently Alleged that the Loans are not "Qualified Education Loans" Excepted from Discharge Pursuant to Section 523(a)(8)(B).**

All pre-petition debt is discharged by operation of law under Chapter 7 of the Bankruptcy

Code *unless* specifically exempt from discharge under Section 523(a), irrespective of a

determination through an adversary proceeding. Not all "student loans" or "educational loans" are

non-dischargeable in bankruptcy. *In re McDaniel*, 590 B.R. 537, 545 (Bankr. D. Colo. 2018), *aff'd*

*and remanded,* No. 18-1445, 2020 WL 5104560 (10th Cir. Aug. 31, 2020) ("'Educational' loans,

or 'student' loans, are not nondischargeable simply because they are labeled as such; they must

meet one or more of the criteria set forth in Section 523(a)(8).").[9] If an "educational loan" or

"student loan" debt does not fit within the ambit of Section 523(a)(8), that debt is discharged upon

entry of the discharge order. *See, e.g.*, *In re Meyer*, No. 15-13193, 2016 WL 3251622, at *2 (Bankr.

N.D. Ohio June 6, 2016) ("[T]he debtor's student loans were discharged on September 16, 2015,

because they do not fall within 11 U.S.C. § 523(a)(8). The Court further finds that the student loan

servicers violated the discharge injunction of § 524(a)(2) by attempting to collect on the student

loan accounts after the date of the debtor's discharge."). Plaintiffs' SAC indicates that the Loans

do not meet *any* of the criteria of Section 523(a)(8), entitled "Exceptions to discharge;"[10] however,

because the Trust focuses its motion only on Section 523(a)(8)(B), Plaintiffs limit their discussion

to explaining that the Loans do not fall within that particular subsection and were therefore

discharged.

---

[9] *See also In re Campbell*, 547 B.R. 49, 61 (Bankr. E.D.N.Y. 2016) ("Simply calling the Bar Loan a student loan is not a declaration that the Bar Loan comes within the ambit of these provisions, and says nothing about the dischargeability of the Bar Loan in bankruptcy.").
[10] *See* ECF No. 136 at ¶¶15-21, 29, 33, and 50-52.

**1. This Court has already rejected the Trust's argument with regard to the applicability of Section 523(a)(8)(B) to the very same Loans.**

From the outset, Plaintiffs note that this Court already considered—and rejected—the very same arguments regarding the applicability of Section 523(a)(8)(B) to the Loans held by the Trust. Defendant, Firstmark, the servicer of the Loans held by the Trust, previously argued in its own motion that the contempt claims against it should be dismissed because, amongst other reasons, an objectively reasonable observer would conclude that Plaintiffs' Loans fall within the exception provided by Section 523(a)(8)(B). *See* ECF No. 108 at 16-21. In support of that theory, defendant, Firstmark—represented by the same counsel that now represents the Trust—presented many of the same arguments now espoused by the Trust in its motion to dismiss. This Court denied Defendant Firstmark's motion in that regard, concluding that "the amended complaint sufficiently states a plausible claim upon which relief can be granted." *See* ECF No. 130 (text only order). Accordingly, by denying Defendant Firstmark's arguments premised on *Taggart v. Lorenzen*,[11] this Court already implicitly rejected the Trust's argument regarding Section 523(a)(8)(B).

Similarly, these arguments regarding Section 523(a)(8)(B) were previously rejected in Plaintiffs' other matter pending before this Court, which is premised on the same legal theories and seeks the same relief but from different defendants. *See Robinson, et al. v. Wells Fargo Bank, N.A., et al.*, Adv. Pro. No. 19-8032-BSK (Bankr. D. Ne.).[12] Specifically, prior to transfer of this case from the U.S. Bankruptcy Court for the Western District of Texas, defendant Citibank moved to dismiss Plaintiffs' allegations as to other loans on the basis that they were qualified education loans under Section 523(a)(8)(B) and therefore not discharged. *See* Citibank's Motion to Dismiss,

---

[11] 139 S. Ct. 1795 (2019).

[12] Prior to transfer, the case was captioned *Robinson, et al. v. Wells Fargo Bank, N.A., et al*., Adv. Pro. No. 19-501 (Bankr. W.D. Tex.).

*Robinson*, Adv. Pro. No. 19-8032 (Bankr. D. Ne. filed July 30, 2019), ECF No. 50 at 11-13. The

court rejected this argument, stating:

> In the Motion to Dismiss, Citibank disputes that the Loan Disbursements were made in excess of the published cost of attendance and contends that the Loan Disbursements were school certified "qualified educational loans" under 11 U.S.C. § 523(a)(8)(B). The Court denies Citibank's Motion to Dismiss Count because the Complaint states a claim as to whether the loans at issue are "qualified educational loans" under § 523(a)(8)(B), whether the loans were school certified, and whether they exceeded the published cost of attendance.

*See* Order, *Robinson*, Adv. Pro. No. 19-8032 (Bankr. D. Ne. filed July 30, 2019), ECF No. 68 at

2. This Court should reject the Trust's argument on this basis alone, consistent with the other

decisions in these matters.

### 2. The Court must look to the statutory framework under Section 523(a)(8)(B) in determining whether an educational loan is a "qualified education loan."

Section 523(a)(8)(B) exempts from discharge only "educational loan[s] that [are] qualified

education loan[s], as defined in section 221(d)(1) of the Internal Revenue Code of 1986," 11 U.S.C.

§ 523(a)(8)(B), which states that a "qualified education loan" is "any indebtedness incurred by the

taxpayer solely to pay qualified higher education expenses[.]" 26 U.S.C. § 221(d)(1). The term

"qualified higher education expenses" is defined in the statute as "the cost of attendance (as defined

in section 472 of the Higher Education Act of 1965, 20 U.S.C. 1087*ll*, as in effect on the day before

the date of the enactment of the Taxpayer Relief Act of 1997) at an eligible educational institution,

reduced by the sum of[,]" *inter alia,* "the amount of any scholarship, allowance, or payment

described in section 25A(g)(2)." 26 U.S.C. § 221(d)(2).

Cost of attendance is then defined as:

(1) tuition and fees normally assessed a student carrying the same academic workload *as determined by the institution* … ;
(2) an allowance for books, supplies, transportation, and miscellaneous personal expenses, … *as determined by the institution*;
(3) an allowance (*as determined by the institution*) for room and board costs incurred by the student which—

> (A) shall be an allowance *determined by the institution* for a student without
> dependents residing at home with parents;
>
> (B) for students without dependents residing in institutionally owned or
> operated housing, shall be a standard allowance *determined by the
> institution* based on the amount normally assessed most of its residents for
> room and board ….

20 U.S.C. 1087*ll*(1)-(3) (emphasis added). Though it is clear that the "cost of attendance" as defined in the Higher Education Act (and relevant for purposes of determining whether an educational loan is a "qualified education loan" under Section 523(a)(8)(B)) is determined by the eligible institution based on the average costs for individual students, the "cost of attendance" is a concrete value. Institutions must report the "cost of attendance" as a concrete value to the Department of Education in order to participate in federal student aid programs. The reported cost of attendance is published on the Integrated Postsecondary Education Data System ("IPEDS") website.[13]

As described above, if an educational loan exceeds the published "cost of attendance" or, alternatively, is within the "cost of attendance" but exceeds the "qualified higher education expenses" – *e.g.*, because the amount is greater than the cost of attendance reduced by a scholarship received) – the loan is not "solely for qualified higher education expenses" and hence it is not a "qualified education loan." Such a loan (exceeding either the "cost of attendance" or the "qualified higher education expenses") is not excepted from discharge under Section 523(a)(8)(B). Plaintiffs' Loans held by the Trust either exceeded both the "qualified higher education expenses" and the "cost of attendance" or solely the "qualified higher education expenses." As a result, the Loans were therefore discharged by operation of law when Plaintiffs' discharge orders were entered.

---

[13] https://nces.ed.gov/ipeds/

### 3. Plaintiffs' certifications in their loan applications are irrelevant in determining whether an educational loan is a "qualified education loan."

The substantive text within the applications for the Loans, which states that the Loans are to be used for tuition and educational expenses, does not change the above outcome. Such a disclosure/certification is insufficient to bring a debt within the statutory definition of a qualified education loan.[14] First, allowing a certification as to the non-dischargeability of a debt would constitute a waiver of dischargeability, which is legally unenforceable as against public policy. *In re Pease*, 195 B.R. 431, 434-35 (Bankr. D. Ne. 1996) ("[A]ny attempt by a creditor in a private pre-bankruptcy agreement to opt out of the collective consequences of a debtor's future bankruptcy filing is generally unenforceable. The Bankruptcy Code preempts the private right to contract around its essential provisions."); *see also Fallick v. Kehr*, 369 F.2d 899, 904 (2d Cir. 1966) ("[W]e have no doubt that the Bankruptcy Act expresses a strong legislative desire that deserving debtors be allowed to get a fresh start. We agree, as the dissent points out, that an advance agreement to waive the benefits of the Act would be void.").[15] The reason for this public policy is obvious: if creditors could obtain a waiver as to the dischargeability of a debt either by including boilerplate language in every loan application and/or promissory note to that effect or by reciting boilerplate facts that would establish non-dischargeability, then every creditor would do so and "creditors

---

[14] Though Plaintiffs maintain that the certification is irrelevant to determining the Loans' dischargeability, Plaintiffs point out that the certification does not even clearly define what is considered "tuition and educational expenses" in a manner consistent with the statutory framework.

[15] *See also, e.g.*, *In re Huang*, 275 F.3d 1173, 1177 (9th Cir. 2002); *In re Cole*, 226 B.R. 647, 651-52 (9th Cir. BAP. 1998); *In re Cietek*, 390 B.R. 773, 779 (Bankr. N.D.N.Y. 2008); *In re Detrano*, 222 B.R. 685, 688-89 (Bankr. E.D.N.Y. 1998); *In re Halpern*, 50 B.R. 260, 262 (Bankr. N.D. Ga. 1985), *aff'd*, 810 F.2d 1061 (11th Cir. 1987); *In re Ethridge*, 80 B.R. 581, 586 (Bankr. M.D. Ga. 1987); *In re Nicholls*, No. 10-70650-DTE, 2010 WL 5128627, at *2 (Bankr. E.D.N.Y. Dec. 10, 2010).

would essentially have the power to nullify the fresh start provided by the Bankruptcy Code." *Ethridge*, 80 B.R. at 586.[16]

Second, a creditor cannot bootstrap itself into one of the provisions of Section 523(a)(8) by having a debtor concede that one of the provisions applies or concede facts that would place the loan within one of those provisions. Either the loan, as a matter of fact, meets those qualifications or it does not. *See, e.g.*, *In re Golden*, 596 B.R. 239, 267 (Bankr. E.D.N.Y. 2019) ("[M]ore is required to satisfy the requirements of Section 523(a)(8) than a statement in a loan document that 'either or both' of certain exceptions from discharge may apply. If that language alone were sufficient, then it is hard to see what role would be left for Congress or the courts in drafting, interpreting, and applying these sections of the Bankruptcy Code."); *In re Dufrane*, 566 B.R. 28, 40 (N.D. Cal. 2017) ("the fact that SunTrust provided in each of the promissory notes … that the loan proceeds would be used to pay educational living expenses … does not make the SunTrust private loans the type of 'obligation to repay funds received as an educational benefit' that Congress sought to make non-dischargeable under § 523(a)(8)(A)(ii)"); *In re Wiley,* 579 B.R. 1, 7 (Bankr. D. Me. 2017) (stating that preprinted language in a promissory note which states that an education loan is non-dischargeable is not demonstrative of non-dischargeability absent evidence that the loan fits within section 523(a)(8)).[17] Certification cannot alter the applicability of Section 523(a)(8) to a loan.

---

[16] Allowing such certifications in loan applications to determine dischargeability would lead to absurd results. If this Court were to accept the Trust's arguments with regard to Plaintiffs' certifications in the loan applications and apply the "purpose of the loan test" without regard to the statutory definition of "qualified education loan," the current student debt crisis would be amplified beyond belief. A student lender could provide a loan totaling $500,000 to an eighteen-year-old enrolling in a college that costs only $40,000 per year, have them sign a certification as to the loan's purpose (that the student, as an unsophisticated party, likely does not understand), and thereby protect the loan from discharge such that the student borrower will be burdened with that debt (possibly for life) incurred in their first year as a legal adult.

[17] *See also In re Mascoll*, 246 B.R. 697, 699-701 (Bankr. D. D.C. 2000) (concluding that an agreement made during the course of the bankruptcy that the plaintiff's debt was not dischargeable was invalid because it failed to comply

### 4. The "purpose of the loan" test is inapplicable if a loan does not fall within the framework of Section 523(a)(8).

Similarly, the "purpose of the loan" test is irrelevant if the underlying loan on its face does not fall within any of the subsections of 523(a)(8). Notably, the cases cited by the Trust do not concern loans that on their face exceeded the cost of attendance or the qualified higher education expenses like the Loans at issue here. For example, the Trust misrepresents that the court in *In re Noland*, No. A09-8048-TJM, 2010 WL 1416788 (Bankr. D. Neb. Mar. 30, 2010), "looked to the purpose of the loans" "[i]n determining that the loans were 'qualified education loans[.]'" *See* ECF No. 164 at 10. In actuality, the *Noland* court did not determine that the loans were qualified education loans; rather, the *Noland* court, faced with a motion for summary judgment that the loans were not "qualified education loans" filed by the debtor, denied summary judgment as to that conclusion. 2010 WL 1416788, at *4. The court did not affirmatively state whether the loans at issue were or were not qualified education loans. In fact, the court noted the absence of evidence as to the cost of attendance at the debtor's institutions as a reason for denying summary judgment, demonstrating that answering this question may ultimately determine whether the loans were or were not qualified education loans. *Id.* ("[T]he definition of 'cost of attendance' includes allowances 'as determined by the institution' for transportation, room and board, and miscellaneous personal expenses. There is no evidence before the court of what each educational institution attended by the debtor deemed to be a reasonable allowance for such expenses. … That

---

with all the protections of the bankruptcy code with regard to reaffirmation agreements, stating: "If the court were to enforce the Repayment Agreement it would allow ARC to circumvent the substantive and procedural requirements of the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure regarding dischargeability of debts.").

is an additional basis for denying summary judgment on the debtor's argument that the loans were not 'qualified education loans.'").

Likewise, in *In re Carow*, No. Adv-10-7011, 2011 WL 802847 (Bankr. D.N.D. Mar. 2, 2011), only after having reviewed stipulated facts and evidence at trial, the court determined the relevant loans were qualified education loans, but noted the lack of evidence as to the "cost of attendance" as a reason for its decision. 2011 WL 802847, *4. ("The 'cost of attendance' means the amount determined by the institution for tuition and fees plus an allowance for books, supplies, transportation, room and board, and miscellaneous personal expenses. ... Although there was testimony that Debtor borrowed the maximum amount of federal student loans for which she was eligible, there is no evidence as to what each educational institution attended by Debtor deemed to be reasonable allowances for the enumerated expenses."). Unlike the cases cited by the Trust where the debtor's argument hinged solely on the assertion that the loan was not used for educational expenses,[18] Plaintiffs' argument is that the Loans held by the Trust exceeded the cost of attendance or the qualified higher education expenses and therefore cannot be considered qualified education loans under Section 523(a)(8)(B).[19]

Consequently, the Trust's only recourse is to affirmatively demonstrate through the course of these proceedings that, for each Loan, after considering all certified loans, financial assistance and scholarships, and any loans made prior to the Trust's Loans, the Trust's Loans do not exceed the qualified higher education expenses. *Golden*, 596 B.R. at 267-69. The Trust has not

---

[18] For additional discussion on this subject, *see* Plaintiffs' Opposition, *Robinson*, Adv. Pro. No. 19-8032-BSK (Bankr. D. Ne. filed Aug. 20, 2019) ECF No. 61 at 10-12.

[19] Alternatively stated, Plaintiffs are not claiming that their Loans ceased to be educational loans because they spent the money on social expenses. Plaintiffs are claiming that their Loans are not "qualified educational loans" because they were nothing more than high-interest consumer credit, and because they exceeded the cost of attendance or the qualified higher education expenses.

demonstrated as much at this stage in the proceedings, nor can it based on the pleadings. Its Motion to Dismiss must be denied.

> **5. The Trust's arguments as to Robinson's cost of attendance are inappropriate at the motion to dismiss stage and conflate the meaning of "cost of attendance."**

The Trust additionally argues that "Plaintiffs' suggested approach fails on its own terms" because "Plaintiffs rely upon inaccurate, incomplete, and understated 'cost of attendance' figures for Butler and Logan during the relevant academic year." ECF No. 164 at 20. In support of this argument, the Trust cites as evidence multiple sources not appropriate for consideration at the motion to dismiss stage and espouses allegations for which there exist genuine disputes of material fact. For example:

- The Trust avers that the "cost of attendance" at Butler was actually higher than the amount reported by Plaintiffs, based on the fact that Robinson studied pharmacy. *Id.* at 20-21. The Trust cites Spears' affidavit in his bankruptcy for support. *Id.* at 21. However, the Trust has also referenced Robinson's loan application in its motion. *See id.* at 20 (citing ECF No. 107-1). A review of Robinson's loan application demonstrates that Robinson selected "Biology" as his "Major Field of Study" at Butler. *See* ECF No. 107-1 at 1. There is therefore a genuine dispute of material fact that must be developed through discovery.

- The Trust avers that the tuition for pharmacy students was $19,410 over two semesters during the 2000-2001 academic year at Butler, citing an old admissions brochure as support. ECF No. 164 at 21. Again, this allegation assumes that Robinson studied pharmacy, an inappropriate assumption absent discovery. Additionally, this admissions brochure does not carry the same weight as the reported "cost of attendance" published

on the IPEDS website. There is therefore a genuine dispute of material fact that must be developed through discovery.

- The Trust also alleges that Robinson was a fourth-year pharmacy student, such that tuition was higher for him in the 2000-2001 academic year. *Id.* In support of this allegation, the Trust points out that Robinson attended Butler from 1998 to 2001. *Id.* In addition to the two aforementioned factual disputes, Plaintiffs do not agree that those facts establish that Robinson was a fourth-year student, as they demonstrate that Robinson only attended Butler for three years.

- The Trust goes on to state that the tuition expenses it gathered from Butler's archives (rather than IPEDS) do not include the other expenses that are encompassed in the "cost of attendance," seemingly implying that those values are not ascertainable. *Id.* However, the published "cost of attendance," including the amounts for books, room and board, etc. were reported to IPEDS and published on its website. They are easily obtainable, but the Trust has tellingly decided against referencing them.

- The Trust additionally states that the "cost of attendance" at Logan is higher than what Logan reported (and is published on the IPEDS website) for the 2005-2006 academic year. *Id.* at 21-22. This allegation is similarly supported by an archived brochure published by Logan, that the Trust concedes is for the incorrect academic year (2004-2005). *Id.* at 22. This Court should not accept this evidence—which does not reflect the "cost of attendance" as reported for the correct academic year—over what is available on the IPEDS website and quoted in Plaintiffs' SAC.

14

Finally, even assuming that the Trust has reported accurate "cost of attendance" figures (it has not),[20] the Trust fails to acknowledge that the Loans could be within the "cost of attendance" but still exceed the "qualified higher education expenses." Specifically, the "cost of attendance" must be reduced by all certified loans, financial assistance and scholarships, and any loans made prior to the Trust's Loans to determine the "qualified higher education expenses." The Trust, having acknowledged that Plaintiffs amassed significant student debt, ECF No. 164 at 24, should be aware that it was not the only source of financial aid for Plaintiffs during the relevant time periods. These facts must be developed and demonstrate that a determination of this amount is inappropriate at the motion to dismiss stage.

### C. Plaintiffs have stated a claim for undue hardship.

Plaintiffs have alleged facts sufficient to support Plaintiffs' undue hardship claims in Paragraphs 88 through 97 of the SAC. *See* ECF No. 136 at 17-18. As noted by the Trust, "the Eighth Circuit follows a more flexible approach under a totality of the circumstances test. … Three factors are evaluated to determine undue hardship under this test: (1) the debtor's past, present, and reasonably reliable future financial resources; (2) a calculation of the debtor's and her dependent's reasonable necessary living expenses; and (3) any other relevant facts and circumstances surrounding each particular bankruptcy case." *In re Fern*, 563 B.R. 1, 3-4 (B.A.P. 8th Cir. 2017) (citations omitted). Notably, the "*Brunner* analysis has been expressly rejected in this Circuit[.]" *Id.*; *see also id.* ("We are convinced that requiring our bankruptcy courts to adhere to the strict parameters of a particular test would diminish the inherent discretion contained in §

---

[20] Where a complaint's allegations conflict with legal conclusions contained in an incorporated document, the complaint's allegations should control. *Eul v. Transworld Sys.*, No. 15-7755, 2017 WL 1178537, at *6-7 (N.D. Ill. Mar. 30, 2017) ("[I]t does not make sense … to credit as true all assertions in 'letters written by the opposition for what could be self-serving purposes' just because they are attached as exhibits …. To disregard Plaintiffs' express allegations in favor of the lender listed on the face of the loans would require the Court to draw a factual inference against the Plaintiffs—that Chase *was* in fact the originator of the loans—which it may not do at the pleading stage.").

523(a)(8) ... We believe that fairness and equity require each undue hardship case to be examined on the unique facts and circumstances that surround the particular bankruptcy.") (internal quotation marks and citation omitted). Accordingly, undue hardship is a determination that cannot be made at the motion to dismiss stage.

Taking the factual allegations of the SAC as true, as this Court must for purposes of deciding the Trust's motion, Plaintiffs have clearly pleaded facts sufficient to state a claim for undue hardship pursuant to Rule 8 of the Federal Rules of Civil Procedure. *See Twombly*, 550 U.S. at 555-56; *Iqbal*, 556 U.S. at 678-79. First, Plaintiffs have pleaded facts sufficient to show that they cannot maintain a minimal standard of living if forced to repay the loans at issue. Plaintiffs' SAC states that Robinson's student debt, some of which is co-signed by Spears, exceeds $885,000 and that a regular repayment schedule would require Robinson and Spears to repay over $10,000 per month.[21] Plaintiffs further alleged that each of their adjusted gross incomes before taxes is approximately $4,878 per month.[22] Combined, this gross income would total $9,756 before taxes, which is plainly less than the loan obligations exceeding $10,000 that Robinson and Spears would face each month if forced to repay the loans. On top of that, Robinson has $3,100 in monthly living expenses and Spears has $3,020 in living expenses (including housing, food, clothing, and medical insurance).[23] These necessary living expenses do not include the loans at issue in this action and are over and above those obligations—obligations that Plaintiffs are unable to meet while maintaining even a minimal standard of living.[24] Plaintiffs have therefore alleged that their obligations exceed their income.

---

[21] SAC at ¶¶ 89-90.
[22] *Id.* at ¶ 91, 93.
[23] *Id.* at ¶¶ 92, 94.
[24] *Id.* at ¶ 95.

Second, Plaintiffs have pleaded facts sufficient to show that this state of affairs is likely to persist. Plaintiffs have asserted that their remaining debt exceeds $885,000 and that Robinson and Spears would need to repay over $10,000 per month if they were required to repay on a regular payment schedule. At their current rates, Plaintiffs would end up repaying more than $1.5 million.[25] This is untenable. Both Robinson and Spears are professionals who work full time. Robinson works as a designated doctor who performs patient examinations, prepares treatment recommendations, and reviews medical records in connection with workers' compensation claims. He is often required to travel for work. Spears works as a hotel manager for a large hotel chain. Robinson and Spears are maximizing their earning potential while at the same time minimizing their expenses by, *e.g.*, owning older vehicles. There is no scenario in which their income can increase so significantly as to cover $10,000 in monthly loan payments as well as living expenses; therefore, Plaintiffs' current state of affairs is likely to persist for the entire repayment period and is likely to worsen as they fall further behind and their loans accrue interest. Short of winning the lottery, there is nothing that Robinson and Spears can do to change this bleak outlook for their future. It is beyond their control and equates to a total incapacity to repay the loans.

Third, Robinson and Spears have alleged that they have made a good faith effort to repay the loans by repaying over $488,000 on Robinson's private student loans to date.[26] In fact, they have already repaid more than they originally borrowed. This is an important point. The interest rates on the loans have resulted in an out-of-control accumulation of debt that that could never be satisfied. The Plaintiffs thus suffer from a "total incapacity" to repay the loans.

Plaintiffs' SAC therefore adequately pleads a claim for undue hardship pursuant to Federal Rule of Civil Procedure 8.

---

[25] *Id.* at ¶ 96.
[26] *Id.* at ¶ 97.

## IV.    **CONCLUSION**

For the foregoing reasons, Plaintiffs request that this Court deny the Trust's Motion to

Dismiss Plaintiffs' Second Amended Complaint.

Dated: September 25, 2020          Respectfully submitted,

By: */s/ Kaki J. Johnson*
Austin Smith, SBN (NY) 5377254
Kaki J. Johnson. SBN (LA) 36513
SMITH LAW GROUP
99 Wall Street, No. 426
New York, New York 10005
(Tel.): 917.992.2121
austin@acsmithlawgroup.com
kaki@acsmithlawgroup.com

Lynn E. Swanson, SBN (LA) 22650
Harvey S. Bartlett III, SBN (LA) 26795
Lindsay Reeves, SBN (LA) 32703
JONES, SWANSON, HUDDELL & GARRISON, L.L.C.
601 Poydras Street, Suite 2655
New Orleans, Louisiana 70130
(Tel.) 504.523.2500
(Fax): 504.523.2508
lswanson@jonesswanson.com
tbartlett@jonesswanson.com
lreeves@jonesswanson.com

Jason W. Burge, SBN (LA) 30420
FISHMAN HAYGOOD L.L.P.
201 St. Charles Avenue, 46th Floor
New Orleans, Louisiana 70170-4600
(Tel.): 504.586.5252
(Fax): 504.586.5250
jburge@fishmanhaygood.com

*Counsel to Plaintiffs Troy O. Robinson and*
*Anthony W. Spears*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on this 25th day of September, 2020, a true and correct copy of the foregoing was served via this Court's electronic case filing system (CM/ECF) to all parties registered to receive such notice in the above-captioned proceeding.

*/s/  Kaki J. Johnson*
Kaki J. Johnson